

**ORDERED in the Southern District of Florida on November 10, 2016.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Case No. 13-22713-BKC-AJC |
| IBES GOMEZ | Chapter 7 |
| Debtor. _____/ | |
| MARIA YIP, Trustee for the estate of IBES GOMEZ, | Adv. No. 14-1574-BKC-AJC-A |
| Plaintiff, | |
| vs. | |
| CONNEDX CORPORATION and LISA M. MADALON, | |
| Defendants. _____/ | |

## "MUCH ADO ABOUT NOTHING"
### (FINDINGS OF FACT AND CONCLUSIONS OF LAW)

THIS CAUSE was tried before the Court on Thursday, September 29, 2016. This is a case that should never have been brought. For reasons unknown, a panel trustee, with a fine reputation of service for many years, lost her perspective. Like Alice in Wonderland, she stepped though a looking glass into a world of fantasy, and saw an estate asset, 3 or 4 shares of corporate

stock with a value of zero, nothing, *nada*, *bupkas*, as being worth $49,000 and proceeded to pursue the $49,000 against an innocent victim of the Debtor's fraud.

The purpose of Chapter 7 bankruptcy in the United States is to provide relief to the ***honest*** debtor and equitable distribution of the ***honest*** debtor's assets to the ***honest*** debtor's creditors. We must start with identification of the players in this silly game. First, the honest debtor is nowhere to be found. The Debtor, Ibes Gomez, is a convicted fraudster serving <u>15</u> years in prison for a series of fraudulent acts (Defendants' Trial Exhibit 24). Next, is Connedx Corporation ("Connedx"), the major vehicle of Gomez's fraudulent operation with a net value of nothing (considering an overdrawn bank account with a negative balance).

The alleged asset of Connedx was a software program saleable to hospitals for millions of dollars – except for one minor flaw. The program did not exist. It was a figment of the imagination of the ***dishonest*** Debtor. Instead, this ***dishonest*** Debtor defrauded investors, using their money to pay for his own personal expenses.

The Trustee in Wonderland saw the corporate stock of Connedx as worth $19,000 a share when, in fact, its value was zero.

The victims of the ***dishonest*** Debtor's fraudulent scheme, some unknown, included an attorney, Joseph Madalon, who should have known better but, for lack of due diligence, was taken for hundreds of thousands of dollars, and his sister, Defendant Lisa Madalon, who was defrauded of over $73,000.

What did Defendant Madalon get for her $73,000? Three or four shares of stock in Connedx worth zero. Defendant Madalon stipulated in paragraph 9 of the Pretrial Stipulation (D.E. 82) that she received the stock certificates although the only evidence at trial suggests she did not receive any stock certificates. For purposes of this proceeding, it will be assumed that

2

she has the certificates (which, incidentally, she offered to turn over to the trustee and which turnover the Trustee declined).

Now on to the evidence. There is no dispute that the Connedx checking account at Chase Bank was a one signature account, that signature being Debtor, Ibes Gomez. The evidence shows that Gomez directed Ms. Madalon to wire the $49,000 for the purchase of the [worthless] stock to the account. The email (Defendants' Trial Exhibit 23) shows the account number for the Connedx checking account at Chase Bank and instructs Ms. Madalon to send payment to Gomez/Connedx.

The money was wired to the account and used by Gomez almost exclusively for his personal benefit, on such purchases as Dunkin Donuts, dog grooming (the corporation did not have a dog!), vacations, and boat rentals at vacation sites. Thus, even if Ms. Madalon had received stock worth $49,000, which she most certainly did not, Debtor got the benefit of the $49,000 by using the Connedx account as his own personal piggy bank.

The Court, having heard the testimony of witnesses and argument of counsel, and having examined the record, makes the following findings of fact and conclusions of law.

## PROCEDURAL HISTORY OF CASE

This case was commenced on May 30, 2013 with the filing of a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code by the Debtor, Ibes Gomes. Plaintiff Maria Yip, as Trustee for the estate of Ibes Gomez, filed the instant adversary action on August 5, 2014 (D.E. 1), pursuant to 11 U.S.C. §§ 541, 542, 548 and 550 against Defendants Lisa M. Madalon and Connedx.

The initial adversary Complaint alleged that the Debtor had made several transfers of funds into a Chase bank account xx0970 (the "Chase Account") totaling $7,800.00 (the "Series

3

Payments") (Complaint, ¶ 7). The Complaint further alleged that Lisa Madalon ("Ms. Madalon") purchased a percentage of the Debtor's stock interest in Connedx for $49,000.00 (the "Stock Payment"), but that she did not tender that Payment to the Debtor; rather, Ms. Madalon tendered the Stock Payment to the Chase Account, in the name of Connedx instead (Complaint, ¶ 8). The Complaint asserted the following causes of action: Fraudulent Transfer Against Connedx Corporation, Fraudulent Transfer Against Connedx Corporation and Lisa M. Madalon, Preferential Transfer Against Connedx Corporation regarding the Series Payments, and Preferential Transfer Against Connedx Corporation regarding the $49,000.00 Stock Payment.

Ms. Madalon and Connedx subsequently filed Answers and Affirmative Defenses to the Complaint (D.E. 14, 15).

The Trustee subsequently amended the Complaint to add claims pursuant to 11 U.S.C. § 547 against Connedx (D.E. 65). Ms. Madalon and Connedx reasserted their affirmative defenses in their Answers and Affirmative Defenses to the Amended Complaint (D.E. 70 and 71).

All parties filed Motions for Summary Judgment (D.E. 49, 50 and 51), each of which were subsequently denied by the Court by Orders dated May 9, 2016 (D.E. 73, 74 and 75). This case was thereafter set for trial by Court Order dated June 25, 2016 (D.E. 83).

## I. FINDINGS OF FACT

1. Lisa Madalon testified at the trial in this action and the Court found her to be a competent, credible and forthcoming witness.

2. Ms. Madalon was a victim of fraud perpetrated by the Debtor, who is a convicted felon.

3. The Debtor swindled many parties, including Joseph Madalon, Connedx and Lisa Madalon.

4.   Debtor was convicted of several counts of grand theft in the first degree, organized fraud/scheme to defraud ($50,000 or more) and several counts for worthless checks. He is presently incarcerated and serving a fifteen (15) year sentence (Defendants' Trial Exhibit 24).

5.   The Debtor founded Connedx and used Connedx as an investment opportunity to fraudulently secure substantial investment funds from Joseph Madalon, Lisa Madalon and others.

6.   The Debtor used the Chase Account in the name of Connedx as a personal bank account in which he often, almost exclusively, spent Connedx monies for his own personal gain.  Until June 11, 2013, Debtor was the sole operator and manager of Connedx.

7.   The Debtor fraudulently induced Ms. Madalon into purchasing Connedx stock by representing to her there was a list of hospitals who were allegedly contracting with Connedx, and he stated the "conservative" value of the estimated revenue from those purported contracts was $1.3 million in the 1st quarter:

> University of Miami - 5 years, approximately $281,000 per year
> Mt. Sinai Miami - 3 years, approximately $281,000 per year
> Memorial West - 5 years, approximately $258,000 per year
> Archbold Hospital - 3 years, approximately $281,000 per year

8.   The Debtor further represented he was in discussions with the following entities to contract with Connedx at the respective amounts:

> University of Illinois Chicago - $338,000 per year
> Mt Sinai Chicago- Potential $284,000 per year
> Stroger Hospital Chicago- potential $284,000 per year
> Rush Medical center Chicago- potential $284,000 per year
> University of El Paso Medical- potential $338,000 per year
> East Carolina medical center- potential $189,000 per year
> Baptist Hospital, 6 hospitals- potential $725,000 per year
> Cedars Sinai California- potential $335,000 per year
> Catholic Health, 39 hospitals- potential $25,000,000
>
> (Defendants' Trial Exhibit 23)

5

9.   All of these representations made by the Debtor to Ms. Madalon in the May 17, 2013 email were false, though Ms. Madalon was not aware of their falsity at the time.

10. At the time of the stock purchase, Ms. Madalon was not aware of the Debtor's financial standing nor of his penchant for fraudulent criminal activity.

11. The Debtor, through his misrepresentations, obtained Ms. Madalon's agreement to pay for a slight stock interest in Connedx, to wit, three percent (3%) of Connedx (the "Stock") for $55,000.00 (Defendants' Trial Exhibit 18).

12. By an email dated May 20, 2013, Ms. Madalon was directed by the Debtor to wire transfer a portion of the Stock purchase price, in the amount of $49,000.00 (the "Stock Payment"), to the Chase Account in care of the Debtor (Defendants' Trial Exhibit 23).

13. Ms. Madalon complied with the Debtor's wire transfer instructions that same day, on May 20, 2013.

14. Although the parties stipulated otherwise, Ms. Madalon asserts she never accepted delivery of the Stock and no stock certificates were ever transferred to or received by Ms. Madalon.

15. Ms. Madalon paid the remaining $6,000.00 of the total purchase price of $55,000.00 to the Debtor's wife.

16. Ms. Madalon was further obligated to purchase an additional share of the worthless Connedx stock from Debtor for $18,333.33 pursuant to a Stock Purchase Agreement between Ms. Madalon and the Debtor dated on or about May 23, 2013 (Defendants' Trial Exhibit 11).

17. Ms. Madalon thereafter discovered that at the time the Stock Payment was transferred, the representations made to her by the Debtor in his May 17, 2013 email to her were false.  None of the hospitals listed therein had committed to do business with Connedx and, in fact, none of the

alleged pending hospital contracts were consummated.  Additionally, Connedx had no viable software.

18. Ms. Madalon also subsequently discovered that at the time of her Stock Payment, the Debtor had forced Connedx into substantial debt by failing to pay its corporate taxes, the rent for the company's office space, and numerous other business obligations.

19. Joseph Madalon, Ms. Madalon's brother who was also a victim of the fraud, lost several hundreds of thousands of dollars.  When the fraud began to unravel, Joseph Madalon was still under the impression that Connedx had a valuable asset which could generate significant funds through contracts with hospitals.  However, going down the road to nowhere, he had the Debtor relinquish ownership and control of Connedx to him, in the hope of salvaging his and his sister's investment, only to ultimately learn the truth – Connedx had no software program, the story was a lie and there were no viable negotiations with any hospitals that could have generated any income to Connedx.  Thus, the corporation was left with a value of zero, the same value as its corporate stock, and Joseph Madalon was left to defend Connedx in this case.

20. During the cross examination of the Trustee at trial, it became evident to the Court that the value of the Stock was zero at the time of the alleged transfer; when the Stock Payment was made, the Stock was worthless.

21. Connedx is also being sued by the Trustee to recover a series of payments made by the Debtor to the Chase Account in the total amount of $7,800 (the "Series Payments") (Defendants' Trial Exhibits 1, 2, 8 and 17).  The Series Payments were made by checks issued from Chase Bank and funded by a checking account in the Debtor's name, maintained at Chase Bank (Amended Complaint D.E. 65, ¶7).

22. Bank records for the Chase Account have been filed in this case, including account statements for the periods January 11, 2013 through January 31, 2013, February 1, 2013 through February 28, 2013, March 1, 2013 through March 29, 2013, March 30, 2013 through April 30, 2013, May 1, 2013 through May 31, 2013, June 1, 2013 through June 28, 2013, June 29, 2013 through July 31, 2013 (Defendants' Trial Exhibit 8).

23. Defendants' Trial Exhibit 17 contains a summary of the transactions reflected in Defendants' Trial Exhibit 8, prepared by the office manager for Joseph Madalon, the corporate representative for Connedx.  It reflects the following withdrawals made by the Debtor:

| | |
|---|---|
| Outgoing transfers: | $9,850.00 |
| Debit Card Personal: | $34,389.62 |
| Check Personal: | $14,829.60 |
| Cash withdrawal: | $84,522.61 |
| Bank Fees for withdrawals & bad checks: | $1,584.00 |
| Automatic Debits: | $5,296.99 |
| **Total:** | **$150,472.82** |

24. The amount of credits representing the monies put back into Connedx by the Debtor are broken down as follows:

| | |
|---|---|
| Barbara Gomez checks: | $11,700.00 |
| Cash Deposits: | $11,652.73 |
| Incoming transfers: | $13,199.00 |
| **Total:** | **$36,551.73** |

25. This summary of the Chase Account transaction history was made after Mr. Madalon and his office manager made a comprehensive review of the bank statements contained in Defendants' Trial Exhibit 8.

26. Mr. Madalon has sufficient personal knowledge to determine which transactions were for Defendant's personal use, and which transactions were for Connedx business.

27. The Debtor was the sole signatory to the Chase Account and was the only individual who had access to the Chase Account funds until June 11, 2013.

28. Mr. Madalon's review of the Chase Account statements contained in Defendants' Trial Exhibit 8 and the summary of that review contained in Defendants' Trial Exhibit 17 reveal that the vast majority of transactions were for the Debtor's personal, non-business related expenses.

29. Mr. Madalon testified that the Debtor appropriated the entire amount of the $49,000.00 Stock Payment deposited in the Chase Account to his own personal use.  The transfer of the Stock Payment funds which form the basis for the Second and Fourth Counts of the Amended Complaint (D.E. 65) resulted in direct benefit to the Debtor.

30. When Mr. Madalon reviewed the Chase Account's transaction history, the records reflected that the Debtor had spent the entirety of the $49,000.00 Stock Payment and then some for his own personal benefit, and that the Account actually had a negative balance.

31.  As demonstrated by Mr. Madalon's testimony at trial, and supported by Defendants' Trial Exhibits 1, 2, 8 and 17, the Debtor also spent the entirety of the $7,800 Series Payments and more for his own personal benefit.  The transfer of the Series Payments funds which form the basis for the First and Third Counts of the Amended Complaint resulted in direct benefit to the Debtor.

32. On January 15, 2015, Ms. Madalon filed a Proof of Claim in the underlying Chapter 7 case for $73,333.33 on the basis of fraud/fraud in the inducement, which amount represents the subject Payment for $49,000.00, as well as $18,333.33 for the additional Connedx share Ms. Madalon purchased on or about May 23, 2013 (Defendants' Trial Exhibit 9).

## II.  CONCLUSIONS OF LAW

### i. Burden of Proof

In an adversary action, a trustee has the burden of proving all elements of a fraudulent transfer claim by a preponderance of the evidence. *Feltman v. Warmus (In re American Way Serv. Corp.)*, 229 B.R. 496, 525 (Bankr. S.D. Fla. 1999); s*ee also Ingalls v. SMTC Corp. (In re SMTC*

*Mfg. of Tex.)*, 421 B.R. 251, 279 (Bankr. W.D. Tex. 2009). It is necessary for a claimant to prove that assets were transferred and *to demonstrate their value* to sustain an action for fraudulent conveyance. *Ingalls v. SMTC Corp.* 421 B.R. at 278-279 (emphasis added). To demonstrate that a transfer was constructively fraudulent, a trustee must show that a debtor transferred an asset without receiving a reasonably equivalent value in return. *Akers v. Castillo (In re Juarez)*, 2008 Bankr. LEXIS 4501 at \*8 (Bankr. S.D. Cal. 2008). A trustee has the burden to prove the avoidability of a transfer as a preferential transfer 11 U.S.C. § 547(g).

Defendants "have the burden of proving elements of value, good faith, and lack of knowledge in support of any good faith defense they may assert under §§ 548(c) or 550(b) or (e)." *Feltman v. Warmus*, 229 B.R. at 525.

### ii. Fraudulent Transfer of Stock Payment Price

To prove a cause of action for a fraudulent transfer, a trustee must show a debtor:

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation;

> 11 U.S.C. § 548(a)(1); *see also* Fla. Stat. § 726.105(1).

For the purposes of this section, "value" is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. §548(d)(2)(A); *see also* Fla. Stat. § 726.104(1).

The Stock had no value. Neither the Debtor nor his bankruptcy estate are entitled to anything for an asset that has no value. Transfer of a valueless asset cannot hinder, delay or defraud

any creditor of value as it is valueless.  Further, it is impossible to receive less than reasonably equivalent value for an asset that has no value.

If a transfer is not supported by reasonably equivalent value, it may be avoided "to protect creditors against the depletion of a bankrupt's estate." *8699 Biscayne, LLC v. Indigo Real Estate LLC (In re 8699 Biscayne, LLC)*, 2012 Bankr. LEXIS 1244 at *13 (Bankr. S.D. Fla. 2012).  It is not required that the parties execute a precise "dollar-for-dollar" exchange for reasonably equivalent value to be present. *Id.*  Similarly, a direct benefit need not exist; it is sufficient if the transaction merely conferred indirect benefits. *Id.* at **13-14.  In this matter, the Estate cannot be depleted by transferring an asset with a value of zero.

To determine whether reasonably equivalent value exists, a court will conduct a two-prong analysis "to determine whether a debtor has received reasonably equivalent value in exchange for its transfer of an interest in its property to another." *Id.* at **14-15.  The first question is whether the debtor received value. *Id.* at *15.  The second question is "whether the value was reasonably equivalent to what the debtor gave up." *Id.*

As to whether a debtor received value, a court will determine whether the debtor received "property, or satisfaction or securing of a present or antecedent debt of the debtor." *Id.* at *16, *citing to* 11 U.S.C. §548(d)(2)(A).  Pursuant to Florida Statute §726.104(3), if the transaction between the debtor and transferee "is intended by them to be contemporaneous and is, in fact, substantially contemporaneous," the transaction is made for present value. *Id.*  In the instant matter, the Debtor was only entitled to receive the reasonably equivalent value of the Stock which is zero. However, in this case, the Debtor actually received $49,000.00 by accessing and spending the monies from the Chase Account for personal gain, all for Stock worth zero. The Debtor received

the $49,000.00 Stock Payment when Ms. Madalon wired that Payment to the Chase Account, as he instructed her to do. The Debtor then spent the entirety of that Payment.

The value received by the Debtor was significantly in excess to what the Debtor gave up, as he was selling Ms. Madalon worthless Stock. At best, the Stock had a value of zero but it could have been assessed to have a negative value as the Debtor incurred substantial debts against the Chase Account before he relinquished control of it to Mr. Madalon. Therefore, the Debtor received a value of $49,000.00 at minimum and most likely more in an amount proportionate to the Stock's negative value.

It would be "fundamentally counter to the statutory purpose of [the Trustee's] avoidance power" for the transfer of the Stock and Payment to be avoided here. *8699 Biscayne*, 2012 Bankr. LEXIS 1244 at *17. The Connedx Corporation is defunct and Ms. Madalon would not have purchased the Stock but for the Debtor's fraudulent misrepresentations. It would run directly counter to the equitable policies of the Bankruptcy Code to effectively compel Ms. Madalon to sustain another loss of $49,000.00 in exchange for valueless stock and bind Ms. Madalon anew to a transaction into which she was duped by a convicted fraudster.

The Court has already determined that the Stock purchased by Ms. Madalon is valueless and that she has received no return on investment of the Stock Payment. To require Ms. Madalon to pay $49,000.00 again for the same valueless Stock, in addition to the $73,333.33 in total she has already paid for Connedx stock (*see*, Proof of Claim, Defendants' Trial Exhibit 9) for potential total payments of $122,333.33, would be a gross injustice.

The Trustee did not and cannot meet her burden of proof on her claim against Ms. Madalon. Under a preponderance of the evidence standard, the claims to avoid the transfer of the Stock Payment as against both Ms. Madalon and Connedx fail, as the record is clear that the Debtor

received reasonably equivalent value for said payment. *See 8699 Biscayne*, 2012 Bankr. LEXIS 1244 at *16.

Furthermore, the Debtor personally received the benefit of the Stock Payment, spending the entirety of that $49,000.00 Payment and then some for his own personal benefit. The fact that the Debtor received reasonably equivalent value as a result of the Stock Payment transfer protects the transfer from being avoided as fraudulent. Therefore, the Second Count of the Amended Complaint (D.E. 65) cannot be sustained.

### iii. Preferential Transfer of Stock Payment Price

At the time of the alleged transfer of the Debtor's stock, Ms. Madalon contemporaneously transferred the Stock Payment of $49,000.00 on May 20, 2013, by wire instructions, to the Chase Account, as Debtor told her to do. Because the Debtor was the only signatory to the Chase Account at the time, the Debtor received the Stock Payment and appropriated the full amount to his own personal use, as is shown by the Chase Account bank statements contained in Defendants' Trial Exhibit 8 and summarized in Defendants' Trial Exhibit 17. The Trustee is not entitled to avoid a transfer as preferential "(1) to the extent that such transfer was—(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1). The requirements of § 547(c)(1) are satisfied here because the transfer of the stock for the Stock Payment was a contemporaneous exchange for value, and the Debtor received $49,000.00, *a massive amount more than* the value of his worthless stock. Therefore, the Trustee's Fourth Claim for Relief for Preferential Transfer against Connedx based on the Stock Payment cannot be sustained.

13

### iv. <u>Fraudulent Transfer of Series Payments</u>

As previously stated, if a transfer is not supported by reasonably equivalent value, it may be avoided "to protect creditors against the depletion of a bankrupt's estate." *8699 Biscayne,* 2012 Bankr. LEXIS 1244 at *13. It is not required that the parties execute a precise "dollar-for-dollar" exchange for reasonably equivalent value to be present. *Id.* Similarly, a direct benefit need not exist; it is sufficient if the transaction merely conferred indirect benefits. *Id.* at **13-14.

As to whether a debtor received value, a court will determine whether the debtor received "property, or satisfaction or securing of a present or antecedent debt of the debtor." *Id.* at *16, *citing to* 11 U.S.C. §548(d)(2)(A). As provided by Florida Statute §726.104(3), if the transaction between the debtor and transferee "is intended by them to be contemporaneous and is, in fact, substantially contemporaneous," the transaction is made for present value. *Id.*

The evidence admitted at trial proves that Debtor received value as he appropriated the full value of the Series Payments in the amount of $7,800.00 to his own personal use and benefit, as is shown by the Chase Account bank statements contained in Defendants' Trial Exhibit 8 and summarized in Defendants' Trial Exhibit 17.

### v. <u>Preferential Transfer of Series Payments</u>

Each time that the Debtor wired the Series Payments to the Chase Account, the Debtor was the only signatory to this account. The Debtor received the Series Payments and appropriated the full amount of $7,800.00 to his own personal use, as is shown by the Chase Account bank statements contained in Defendants' Trial Exhibit 8 and summarized in Defendants' Trial Exhibit 17. The Trustee is not entitled to avoid a transfer as preferential "(1) to the extent that such transfer was—(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially

14

contemporaneous exchange" 11 U.S.C. § 547(c)(1).  The requirements of § 547(c)(1) are satisfied here because the transfers of the Series Payments were contemporaneous exchanges for new value, with the Debtor personally receiving the full benefit of $7,800.00 of new value.  Therefore, the Trustee's Third Claim for Relief for Preferential Transfer against Connedx based on the Series Payments cannot be sustained.

## FINAL CONCLUSIONS

The Court has reviewed the Trustee's Direct Testimony filed herein and concludes it is inaccurate, misleading and full of misstatements.  For instance, contrary to paragraphs 20 and 21, Defendants did not benefit at all by the Stock Payment or the Series Payments; the Debtor received the full benefit of the $49,000, the subsequent stock purchase, and the $7,800 Series Payments, and the evidence at trial bears this out.  Contrary to paragraph 33, the Debtor received more than the reasonably equivalent value of the worthless stock he sold to Ms. Madalon and further received the full value of the Series Payments which he used for his personal expenses.  Debtor duped investors, including Ms. Madalon, into purchasing stock and sending the purchase price to Connedx – which he thereafter siphoned out for personal expenses.  The Trustee's reliance on Debtor's Schedules and Statement of Financial Affairs to state a claim against the Defendants is misguided, as the Debtor is a thief convicted of defrauding the Defendants.

The Court also found the Trustee to be a poor witness at trial.  None of the counts of the Amended Complaint were proven under 11 U.S.C. § 547 or § 548 at trial.  Moreover, it is contrary to the equitable policies underlying the Bankruptcy Code to avoid the transfer of the stock and effectively compel Ms. Madalon to sustain another loss of $49,000.00 in exchange for valueless stock.

The Debtor received more than the value of the worthless stock he transferred to Ms. Madalon. The Debtor was the sole signatory to the Chase Account where the Stock Payment and Series Payments were deposited, and he was the only individual who had access to the Chase Account funds until June 11, 2013. Mr. Madalon's review of the Chase Account statements contained in Defendants' Trial Exhibit 8 and the summary of that review contained in Defendants' Trial Exhibit 17 revealed that the majority of transactions were for the Debtor's personal, non-business related expenses.

The evidence proved the Debtor appropriated the entire amount of the $49,000.00 Stock Payment deposited in the Chase Account to his own personal use. The transfer of the Stock Payment funds, which the Trustee has claimed as the basis for the Second and Fourth Counts of the Amended Complaint (D.E. 65) resulted in direct benefit to the Debtor.

As demonstrated by Mr. Madalon's testimony at trial and Defendants' Trial Exhibits 1, 2, 8 and 17, the Debtor also spent the entirety of the $7,800.00 in Series Payments, and then some, for his own personal benefit. The transfer of the Series Payments funds, which the Trustee has claimed as the basis for the First and Third Counts of the Amended Complaint (D.E. 65) resulted in direct benefit to the Debtor.

Based on the foregoing Findings of Fact and Conclusions of Law, it is

ORDERED AND ADJUDGED as follows:

1.      Defendant Lisa M. Madalon is entitled to judgment in her favor as to the Amended Complaint (D.E. 65).

2.      Defendant Connedx Corporation is entitled to judgment in its favor as to the Amended Complaint on the Stock Payment and the Series Payments (D.E. 65).

16

     3.      Final Judgment will be entered by separate order, in accordance with Federal Rule of Civil Procedure 58.

###

Copies furnished to all counsel of record by the Clerk of Court.